**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CURTIS CHAPMAN, on Behalf of Himself and All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>J.JILL, INC., PAULA BENNETT, DAVID BIESE, MICHAEL RAHAMIM, ANDREW ROLFE, TRAVIS NELSON, MARKA HANSEN, MICHAEL ECK, MICHAEL RECHT, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MORGAN STANLEY & CO. LLC, JEFFERIES LLC, DEUTSCHE BANK SECURITIES INC., RBC CAPITAL MARKETS, LLC, UBS SECURITIES LLC, WELLS FARGO SECURITIES, LLC, COWEN AND COMPANY, LLC, MACQUARIE CAPITAL (USA) INC., SUNTRUST ROBINSON HUMPHREY, INC., and TOWERBROOK CAPITAL PARTNERS L.P.,<br><br>　　　　　　　　　Defendants. | Civil Action No.<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

　　　　Plaintiff Curtis Chapman ("Plaintiff"), individually on behalf himself of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by J.Jill, Inc. ("J.Jill" or the "Company"), Company press releases, analyst reports on the Company, and media reports and other publicly disclosed reports and information about the Company. Plaintiff believes that

substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.     NATURE OF THE ACTION

1.     This is a securities class action seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.     Plaintiff alleges claims under the Securities Act on behalf of persons who purchased J.Jill common stock in the Company's March 9, 2017 initial public offering ("IPO" or "Offering") under an Amended Registration Statement filed with the SEC on Form S-1/A on February 27, 2017 and a Prospectus filed with the SEC on March 9, 2017 (the "Prospectus") (collectively the "Registration Statement") which became effective on March 9, 2017 (the "Class").

3.     In the Offering, 11,666,667 shares of J.Jill common stock were sold at $13.00 per share for gross proceeds of $151,666,671.  The sole selling stockholder in the Offering was Defendant TowerBrook Capital Partners L.P. (together with its investment vehicles and funds, "TowerBrook").  TowerBrook was the private equity sponsor of the IPO and sold its shares in the IPO. Accordingly, the Company did not receive any proceeds from the sale of shares of common stock in the Offering.

4.     In violation of the Securities Act, the Registration Statement contained material untrue statements and omitted material facts required to be stated in order to make the statements not misleading.

5.     According to the Registration Statement, J.Jill purports to be a "nationally recognized women's apparel brand focused on a loyal, engaged and affluent customer in the attractive 40-65 age segment" that operates a "highly profitable omni-channel platform that is

well diversified" across its direct and retail channel. The Company purports to have developed "an industry-leading customer database that allows us to match approximately 97% of transactions to an identifiable customer" that takes a "data-driven centric approach, in which we leverage our database and apply out insights to manage our business as well as to acquire and engaged customers to drive optimum value and productivity."

6. The Registration Statement represented that at the time of the IPO the Company had "delivered strong, consistent growth in sales and profitability" and had "established a solid foundation to support long-term, sustainable growth by investing to build our team, market our brand and enhance our systems, distribution center and data insight capabilities." The Registration Statement further represented that "our customer-focused strategy, foundational investments and data insights have resulted in consistent, profitable growth and industry-leading Adjusted EBITDA margins of 14.6% in pro forma fiscal year 2015."

7. The Registration Statement represented that a key reason for the Company's growth at the time of the Offering was growth in the Company's "direct channel" sales. The Company's direct channel consists of sales through the Company's website and catalog order.

8. The Registration Statement represented that the "[g]iven our recent growth in the direct channel, we expect to grow this business to approximately 50% of total net sales over the next few years" and that "our direct penetration has grown rapidly and accounted for 42% of net sales for the twelve months ended October 29, 2016 driven primarily by growth in our E-commerce business."

9. The Registration Statement represented that another important financial metric of the Company was its total company comparable sales. The Registration Statement represented that "[t]*otal company comparable sales* includes net sales from our full-price stores

that have been open for more than 52 weeks and from our direct channel. This measure highlights the performance of existing stores open during the period, while excluding the impact of new store openings and closures." (Emphasis in original). In particular, the Registration Statement represented "[p]ositive total company comparable sales growth in 17 of the last 19 consecutive quarters, including in each of the last ten consecutive quarters."

10. The Registration Statement's representations concerning the Company's purported growth in its direct-to-consumer sales, and total comparable sales growth were untrue statements and failed to disclose material facts because, at the time of the Offering, the growth in Company's total company comparable sales had materially declined, and shortly after the IPO, turned negative, and the Company's direct to consumer sales were not growing.

11. On October 11, 2017, after the close of trading, J.Jill issued a press release titled "J.Jill Updates Q3 Fiscal 2017 Guidance, that stated the following:

> J.Jill, Inc. (JILL) today announced that the company is updating its guidance for the third quarter ending October 28, 2017.
>
> Paula Bennett, President and CEO of J.Jill, Inc., stated: "We have experienced a lower than expected sales trend across both our retail and direct channels, and are updating our guidance for the quarter. We have been assessing the change in trend and have identified product and marketing calendar issues that are affecting traffic and conversion, and we are reacting quickly."
>
> For the third quarter 2017, the company now expects total company comparable sales of -3% to -5%, with a moderate decline in gross margin as compared to last year. The company also now expects GAAP diluted EPS of $0.07 to $0.09, and adjusted diluted EPS of $0.08 to $0.10 for the third quarter 2017. Adjusted diluted earnings per share excludes approximately $0.6 million of non-recurring expenses associated with the company's transition to a public company.

12. On October 12, 2017, *The Motley Fool* published an article titled *Here's Why There's an Unwanted Half-Off Sale on J. Jill Shares,* that stated, in part:

> What's potentially even more disturbing is that the company's press release suggested a weakness in both its retail and direct sales. Direct-to-consumer sales represent a growing share of the company's sales, and they're a considerably higher

4

growth opportunity for J. Jill. Problems with direct-to-consumer sales could suggest that the company's data centric approach to understanding its customers may not be working as well as expected . . . .

13.     On October 12, 2017, J.Jill stock declined from a close on October 11, 2017 of $9.93 per share, to close at $4.86 per share, a decline of $5.07 per share or over 51% on heavy trading volume.

14.     On October 23, 2017, J.Jill common stock closed at $5.54 per share, or more than 57% below the IPO price of $13 per share.

## II.    JURISDICTION AND VENUE

15.     The claims alleged herein are brought under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o.

16.     This Court has jurisdiction over the claims alleged in the action under Section 22 of the Securities Act and 28 U.S.C. § 1331.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b), because J.Jill maintains an office in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

18.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## III.   PARTIES

19.     Plaintiff purchased shares of J.Jill common stock pursuant and/or traceable to the IPO as described in the Certification attached hereto and incorporated by reference, and has been damaged thereby.

5

20. Defendant J.Jill is headquartered at 4 Batterymarch Park, Quincy, MA, 02169. J.Jill common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "JILL." J.Jill was the issuer of the common stock in the Offering.

21. Defendant Paula Bennett ("Bennett") was President, Chief Executive Officer ("CEO") and a director of the Company at the time of the IPO and signed the Registration Statement.

22. Defendant David Biese ("Biese") was Chief Financial Officer ("CFO") of the Company at the time of the IPO and signed the Registration Statement.

23. Defendant Michael Rahamim ("Rahamim") and was the Chairman of the Board of Directors of J.Jill at the time of the IPO and signed the Registration Statement. Defendant Rahamim is a member of the Senior Advisory Board of Defendant TowerBrook.

24. Defendant Andrew Rolfe ("Rolfe") was a director of the Company at the time of the IPO and signed the Registration Statement. Defendant Rolfe has served as a Managing Director and the Head of Private Equity, USA of Defendant TowerBrook since January 2011.

25. Defendant Travis Nelson ("Nelson") was a director of the Company at the time of the IPO and signed the Registration Statement. Defendant Nelson has served as a Managing Director of Defendant TowerBrook since May 2015.

26. Defendant Marka Hansen ("Hansen") was a director of the Company at the time of the IPO and signed the Registration Statement.

27. Defendant Michael Recht ("Recht") was a director of the Company at the time of the IPO and signed the Registration Statement. Defendant Recht has served as a Senior Principal at Defendant TowerBrook since August 2013.

28. Defendant Michael Eck ("Eck") was a director at the time of the IPO and signed

the Registration Statement.

29.     Defendants Bennett, Biese, Rahamim, Rolfe, Nelson, Hansen, Recht and Eck are referred to herein as the "Individual Defendants."

30.     Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, Jefferies LLC, Deutsche Bank Securities Inc., RBC Capital Markets, LLC, UBS Securities LLC, Wells Fargo Securities, LLC, Cowen and Company, LLC, Macquarie Capital (USA) Inc., and SunTrust Robinson Humphrey, Inc. (collectively referred to as the "Underwriter Defendants") served as underwriters for the Offering and sold million shares of J.Jill common stock in the offering, as follows:

| Underwriter | Number of Shares |
|---|---|
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | 3,150,003 |
| Morgan Stanley & Co. LLC | 2,800,000 |
| Jefferies LLC | 1,516,666 |
| Deutsche Bank Securities Inc. | 758,333 |
| RBC Capital Markets, LLC | 758,333 |
| UBS Securities LLC | 758,333 |
| Wells Fargo Securities, LLC | 758,333 |
| Cowen and Company, LLC | 466,666 |
| Macquarie Capital (USA) Inc. | 350,000 |
| SunTrust Robinson Humphrey, Inc. | 350,000 |
| **Total** | 11,666,667 |

31.     The Underwriter Defendants drafted and disseminated the Registration Statement. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

32.     Defendant TowerBrook maintains an office at 65 East 55th Street, 27th Floor, New York, New York 10022.  TowerBrook controlled J.Jill both before and after the Offering through its ownership of a majority of J.Jill common stock and its representatives comprise a majority of the Company's board of directors.  TowerBrook was the sole selling shareholder in the Offering.

**IV.     FACTS AND BASIS FOR LIABILITY**

33.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

34.     The Registration Statement represented J.Jill's total comparable company sales year-over-year were growing at the time of the Offering:

> For fiscal year 2016, we estimate that our net sales will range from $638.5 million to $639.5 million, an increase of $77.0 million, or 13.7%, using the mid-point of the estimated net sales range when compared with net sales of $562.0 million for pro forma fiscal year 2015. **The increase in net sales was due to an increase in total comparable company sales of approximately 11.1% to 11.3% for fiscal year 2016**, primarily driven by an increase in our active customer base from 1.5 million during pro forma fiscal year 2015 to 1.7 million for fiscal year 2016. . . .

35.     The Registration Statement likewise represented an increase in total comparable company sales quarter-over-quarter:

> For the thirteen weeks ended January 28, 2017, we estimate that our net sales will range from $166.4 million to $167.4 million, an increase of $21.5 million, or 14.8%, at the mid-point of the estimated net sales range when compared with net sales of $145.4 million for the thirteen weeks ended January 30, 2016. **The increase in net sales was due to an increase in total comparable company sales of approximately 10.7% to 10.9%** for the thirteen weeks ended January 28, 2017. . . .

36.     The Registration Statements representations concerning the Company's total comparable company sales were untrue and failed to disclose that at the time of the Offering, the rate of increase in J.Jill's total comparable company sales had materially declined. For the quarter ended January 28, 2017 (before the Offering), the Company reported total company comparable sales increased by 10.7-10.9%. For the quarter ended April 29, 2017 (the first quarter after the Offering), the Company reported total company comparable sales increased by 9.9%, a decrease in the rate of increase of over 8%. For the quarter ended July 29, 2017, the Company reported

total company comparable sales increased by 7.8%, a decrease in the rate of increase of over 27% compared to the quarter ended January 27, 2017. On October 11, 2017, the Company reported that the Company's total comparable sales would be -3-to-5% for the quarter ending October 29, 2017.

37. With respect to the Company's direct channel sales, the Registration Statement represented that "our direct penetration has grown rapidly and accounted for 42% of net sales for the twelve months ended October 29, 2016 driven primarily by growth in our E-commerce business."

38. Further, the Registration Statement represented that a "[k]ey driver" of the Company's "growth story" included the Company's increased direct sales:

> Our direct channel was responsible for 43% of our net sales for fiscal year 2016, an increase from 40% for pro forma fiscal year 2015. Within our direct channel, E-commerce represented 89% of net sales for fiscal year 2016 and catalog orders represented 11% of net sales for fiscal year 2016. . . .
>
> Given our strong foundation that positions us to capitalize on the growth of online and mobile shopping, we believe we have the opportunity to grow our direct sales from 42% of our net sales to approximately 50% over the next few years. . . .
>
> Our direct channel, which represented 42% of total net sales for the twelve months ended October 29, 2016, consists of our website and catalog orders. Given our recent growth in the direct channel, we expect to grow this business to approximately 50% of total net sales over the next few years. . . .

39. The Registration Statements representations concerning the Company's direct sales were untrue and failed to disclose because at the time of the Offering, the Company's direct sales were not growing. For the fiscal year ended January 28, 2017 (before the Offering), the Company reported total direct to consumer net sales represented approximately 42-43% of net sales. For the quarter ended April 29, 2017 (the first quarter after the Offering), the Company reported total

9

direct to consumer net sales represented 42.6% of total net sales. For the quarter ended July 29, 2017, the Company reported total direct to consumer net sales of 42.3%.

40. Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii), requires defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on the sales or revenues or income from continuing operations." Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503, requires, in the "Risk Factor" section of registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or risky" and requires each risk factor to "adequately describe[] the risk."

41. The failure of the Registration Statement to disclose that the rate of increase in Company's total company comparable sales had materially declined at the time of the Offering, and total direct to consumer net sales were not growing at the time of the Offering, violated 17 C.F.R. §229.303(a)(3)(ii), because these undisclosed facts would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations. This failure also violated 17 C.F.R. §229.503 because these specific risks were not adequately described.

### V. CLASS ALLEGATIONS

42. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class, defined above. Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

43. The members of the Class are so numerous that joinder of all members is impracticable. J.Jill common stock is traded on the NYSE and over 11.6 millions of shares were

sold in the IPO. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class.

44. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

45. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

46. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (i) whether defendants violated the Securities Act; (ii) whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business and operations of J.Jill; and (iii) to what extent the members of the Class have sustained damages and the proper measure of damages.

47. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I

### For Violations of Section 11 of the Securities Act Against All Defendants Except TowerBrook

48. Plaintiff repeats and realleges ¶¶1-47 by reference.

49. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants except TowerBrook.

50. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

51. J.Jill is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

52. As issuer of the shares, J.Jill is strictly liable to plaintiff and the Class for the misstatements and omissions.

53. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

54. By reason of the conduct alleged herein, each defendant violated Section 11 of the Securities Act.

55. Plaintiff acquired J.Jill common stock pursuant and/or traceable to the Registration Statement for the IPO.

56. Plaintiff and the Class have sustained damages. The value of J.Jill common stock has declined substantially subsequent to and due to defendants' violations.

57. At the time of their purchases of J.Jill common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.

## COUNT II

### For Violation of Section 15 of the Securities Act
### Against the Individual Defendants and TowerBrook

58. Plaintiff repeats and realleges ¶¶1-47 by reference.

59. This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants and TowerBrook.

60. The Individual Defendants each were control persons of J.Jill by virtue of their positions as directors and/or senior officers of J.Jill. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholder of J.Jill.

61. TowerBrook had control over J.Jill at the time of the IPO, and continues to have control over the Company through its control over a majority of the common stock of the Company and a majority of the Company's board of directors.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of the Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: October 24, 2017

        BLOCK & LEVITON LLP

        /s/ Jeffrey C. Block

        Jeffrey C. Block (BBO #600747)
        Thomas Kirchofer (BBO #666798)
        BLOCK & LEVITON LLP
        155 Federal Street, Suite 400
        Boston, MA 02110
        Ph: (617) 398-5600
        Fax: (617) 507-6020
        jeff@blockesq.com
        tom@blockesq.com

        Donald R. Hall
        Jeffrey P. Campisi
        KAPLAN FOX & KILSHEIMER LLP
        850 Third Avenue; 14th Floor
        NY, NY 10022
        Ph: (212) 687-1980
        Fax: (212) 687-7714
        jcampisi@kaplanfox.com

        *Counsel for Plaintiff and the Proposed Class*